## State of Connecticut *v.* William F. Grant

Loiselle, Bogdanski, Longo, Healey and Sidor, Js.

Federal, Connecticut and New York wiretap statutes, compared and discussed.

Argued April 11—decision released August 22, 1978

*Austin J. McGuigan,* assistant state's attorney, with whom was *John J. Dropick,* assistant prosecutor, for the appellant (state).

*John P. McKeon,* for the appellee (defendant).

LOISELLE, J. The state filed a writ of error from a judgment of the Court of Common Pleas in Hartford County dismissing with prejudice the case against the defendant. At the request of both parties, we granted a motion to expedite the hearing.

The essential facts of the case are undisputed: Pursuant to a warrant, issued on the basis of information obtained from two authorized wiretaps, the defendant was arrested and charged with several crimes pertaining to alleged gambling activities. Before trial, the defendant moved to suppress the evidence derived from the wiretaps on the ground that the communications were unlawfully intercepted in violation of chapter 959a of the General Statutes, entitled "Wiretapping and Electronic Surveillance." The court granted the motion, finding that the two applications for wiretap orders were acknowledged by the appropriate state's attorneys, but were not submitted under the state's attorneys' oaths as required by General Statutes §§ 54-41b and 54-41c. The court concluded that suppression of the evidence was required by General Statutes § 54-41m and Practice Book, 1963, § 2234 and subsequently, the defendant's motion to dismiss was granted.

The state's writ of error raises two issues: (1) do General Statutes §§ 54-41b and 54-41c require that an application for a wiretap order be submitted under the oath of the appropriate state's attorney and (2) if so, does General Statutes § 54-41m compel suppression of communications derived from wiretap orders issued on the basis of applications merely acknowledged by the appropriate state's attorney?

## I

A resolution of those issues requires interpretation of the relevant provisions of chapter 959a, which governs the issuance of orders authorizing wiretaps. General Statutes § 54-41b provides that "[t]he state's attorney for the county in which the interception is to be conducted may make application to a panel of judges for an order authorizing the interception of any wire communication by investigative or law enforcement officers . . . ." Under this statute, it is only the state's attorney for a particular county who is authorized to submit an application for a wiretap order. See *State* v. *DeMartin,* 171 Conn. 524, 543, 370 A.2d 1038. The following provision, General Statutes § 54-41c, begins: "Each application for an order authorizing the interception of a wire communication *shall be made in writing upon oath or affirmation* to a panel of judges." (Emphasis added.) Although this sentence does not explicitly state that the required "oath or affirmation" is to be that of the applicant state's attorney, its association with the previous provision implies this. Such a reading is confirmed by subsection 12 of General Statutes § 54-41c which specifies that "[a]llegations of fact in the application may be based either upon the personal knowledge of the *applicant* or upon information and belief." (Emphasis added.) The remainder of this subsection details how the evidence relied upon for a determination of probable cause is to be conveyed and supported, concluding: "Affidavits of persons other than the applicant may be submitted in conjunction with the application if they tend to support any fact or conclusion alleged therein. Such accompanying affidavits may be based either on per-

sonal knowledge of the affiant, or information and belief with the source thereof and reason therefor specified."

In construing a statute, this court seeks to ascertain the intent of the legislature as it is expressed through the words actually used. *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506. Generally, " 'no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . .' " *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491. Insofar as it is possible, the entire enactment is to be harmonized, each part made operative. *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150.

When read together, General Statutes §§ 54-41b and 54-41c clearly reveal that the "oath or affirmation" required is that of the applicant, who can only be the state's attorney for the county in which the interception is to occur. Contrary to the state's contention that a sworn affidavit submitted by the investigating officer meets the requirement, General Statutes § 54-41c (12) explicitly provides for the use of affidavits "of persons other than the applicant" only "if they tend to support any fact or conclusion alleged [in the application]." While these supplementary affidavits are not per se required to satisfy the statute, the statute compels the "oath or affirmation" of the applicant for every application.

The state argues that General Statutes § 54-41c "mirrors" its federal counterpart, 18 U.S.C. § 2518, and that the latter statute's "oath or affirmation" requirement is satisfied by the sworn affidavit of an investigating officer. The state's claim fails to take

into consideration important differences in the language of the two statutes. Under the federal scheme, the attorney general or a designated assistant attorney general is empowered to *authorize* a wiretap application. 18 U.S.C. § 2516. The application is, in fact, made by the "investigative or law enforcement officer" and "authorized" by one of the so-empowered officials. See 18 U.S.C. § 2518 (1) (a). The Connecticut scheme, on the other hand, envisions an application submitted by the appropriate state's attorney on behalf of "the investigative or law enforcement officers or agency for whom the authority to intercept a wire communication is sought." General Statutes § 54-41c (2). Consequently, federal authority cannot be relied upon as guidance on this point.

It is the further claim of the state that General Statutes § 54-41c was intended to delineate a procedure for the issuance of wiretap orders which meets the requirements of the fourth amendment of the United States constitution. It is true that the comparable federal statute was enacted in response to *Berger* v. *New York,* 388 U.S. 41, 87 S. Ct. 1873, 18 L. Ed. 2d 1040. *State* v. *DeMartin,* supra, 538. In *Berger,* the United States Supreme Court determined that the New York eavesdropping statute violated the fourth amendment in that it was too broad, not requiring, among other deficiencies, sufficiently specific information as a basis for a finding of probable cause. Reiterating established principles, the court noted (p. 55) that "[t]he Fourth Amendment commands that a warrant issue . . . only upon probable cause supported by oath or affirmation" and that such "exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy infor-

mation, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed."

There is no doubt that the term "oath or affirmation" stems from the fourth amendment[1] and that ordinarily this requirement is satisfied by the submission to a judge or magistrate of affidavits signed by police officers. See, e.g., *State* v. *Rose,* 168 Conn. 623, 362 A.2d 813; *State* v. *Townsend,* 167 Conn. 539, 356 A.2d 125; *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900. A particular statutory scheme limiting the issuance of warrants, however, may offer greater protection than that minimally required by the fourth amendment. The New York statute scrutinized in *Berger,* supra, specifically provided for the issuance of an eavesdropping order only upon "oath or affirmation of a district attorney . . . that there is reasonable ground to believe that evidence of crime may be thus obtained." Id., 54. The New York "eavesdropping" statute enacted after *Berger*; N.Y. Crim. Proc. Law art. 700; appears to maintain this approach, requiring that an application be made in writing and "be subscribed and sworn to by an applicant"; N.Y. Crim. Proc. Law § 700.20; "applicant" being defined as a district attorney or the attorney general. N.Y. Crim. Proc. Law § 700.05.[2]

The state argues, however, that a requirement that the application be submitted under the "oath or affirmation" of a state's attorney does not offer

---

[1] The same term is evident in Conn. Const., art. I, § 7.

[2] In this respect, it is noteworthy that the New York provision delineating the contents of an application is almost identical to § 54-41c, particularly with respect to the way in which allegations in the application are to be supported. See N.Y. Crim. Proc. Law § 700.20 (3) and General Statutes § 54-41c (12).

greater protection than the traditional supportive affidavits of investigating officers, and, indeed, may not suffice to meet fourth amendment requirements since more often than not state's attorneys are without "personal knowledge" of the relevant facts. General Statutes § 54-41c (12) explicitly states that "[a]llegations of fact in the application may be based *either upon the personal knowledge of the applicant or upon information and belief.*" (Emphasis added.) In other words, the state's atorney is to swear to the truth of the facts alleged in the application to the extent that he has personal knowledge, information or belief. The statute goes on to state how the facts known or believed are to be supported in the application in order that the panel of judges to whom the application is submitted may make an independent determination of probable cause, as is required by the fourth amendment. The statute cannot circumvent this essential constitutional requirement and the oath of the state's attorney alone does not establish probable cause. Rather, it serves to ensure, as far as possible, that the applicant state's attorney has made an intermediate determination, on the existing facts, that issuance of a wiretap order is warranted both constitutionally and statutorily.

The state asserts that responsibility is sufficiently focused on the state's attorney by virtue of his acknowledgement on the application form. Such an assertion misconstrues the vital distinction between an oath and an acknowledgement. While General Statutes §§ 1-22 to 1-25 govern the form and procedure involved in the use of oaths, General Statutes §§ 1-28 to 1-41 concern only acknowledgements. As a general rule, an acknowledgement constitutes a formal statement of the person executing

an instrument that he or she executed the instrument as a free deed and act. *Freeman* v. *Morrison,* 214 N.C. 240, 199 S.E. 12; 1 Am. Jur. 2d, Acknowledgements, § 1; see also General Statutes § 1-34. An oath, on the other hand, signifies the undertaking of an obligation "to speak the truth at a time when . . . testimony may deeply affect the rights and the character of individuals." *Chapman* v. *Gillet,* 2 Conn. 40, 44. Consequently, the protection afforded by an application sworn to by the applicant state's attorney does provide greater protection than an application merely acknowledged, for the oath imposes upon the applicant greater responsibility. General Statutes §§ 54-41b and 54-41c mandate that this responsibility be undertaken with every application.

## II

The question then arises as to whether the communications derived from wiretap orders issued on the basis of applications merely acknowledged by the appropriate state's attorneys must be suppressed. General Statutes § 54-41m provides that "the contents of any intercepted wire communication, or evidence derived therefrom," may be suppressed "on the grounds that the communication was unlawfully intercepted under the provisions of this chapter; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval." The ground for suppression advocated by the defendant and asserted by the trial judge in this case is that the communications were "unlawfully intercepted under the provisions of this chapter" since the applications were not submitted under the oath of a state's attorney.

Interpreting the comparable federal ground for suppression, provided for in 18 U.S.C. § 2518 (10)(a), a provision identical in its essence to General Statutes § 54-41m, the United States Supreme Court delineated the standard for suppression in terms of whether the breached statutory requirement "directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States* v. *Giordano*, 416 U.S. 505, 527, 94 S. Ct. 1820, 40 L. Ed. 2d 341; see also *United States* v. *Donovan*, 429 U.S. 413, 435, 97 S. Ct. 658, 50 L. Ed. 2d 652. In *United States* v. *Chavez*, 416 U.S. 562, 575, 94 S. Ct. 1849, 40 L. Ed. 2d 380, the companion case to *Giordano*, the court determined that a failure to abide by a requirement which "did not affect the fulfillment of any of the reviewing or approval functions required by Congress" did not require suppression.

Because the three grounds for suppression in the federal statute are identical to those set forth in General Statutes § 54-41m, we may look to the federal interpretation for guidance in determining an appropriate state standard. Because the Connecticut scheme is, however, in many respects more stringent than the equivalent federal act,[3] it is necessary to look to the state act to determine whether the particular requirement not followed was

[3] A review of chapter 959a reveals that the state legislature imposed significant limitations on the use of electronic surveillance not found in 18 U.S.C. §§ 2510–2518; section 54-41c prohibits the issuance of an order if the information upon which the order is based is discovered more than fifteen days preceding the date of the application, while § 2518 imposes no such restriction; section 54-41b limits the use of electronic surveillance to three types of offenses, while § 2516 is far less restrictive; section 54-41d allows for a

intended by the legislature to be a substantive part of a scheme seeking to limit the use of "this extraordinary investigative device." *United States* v. *Giordano,* supra, 527.

As noted above, General Statutes §§ 54-41b and 54-41c authorize only the state's attorney of the county in which interception is to occur to apply for a wiretap order. The requirement that the application be submitted under the oath of the applicant places upon the state's attorney a stringent burden fully to review and vouch for the evidence set forth in the application. The ultimate responsibility for a determination of probable cause and a determination of whether a wiretap order is warranted under the statute lies with a panel of judges. But the statute clearly envisions an intermediate level of responsibility for such a determination— that imposed upon the state's attorney. The oath, signifying that the underlying evidence is known or believed by the applicant to be true, constitutes a central part of this overall protective scheme.

In the present case, the failure of the appropriate state's attorneys to submit their respective applications under oath goes to the heart of the "reviewing or approval functions" established by the legislature. We, therefore, conclude that the trial court properly granted the defendant's motion to suppress

---

maximum issuance of thirty-four interception orders per year, while § 2518 contains no equivalent restriction; section 54-41e requires the termination of interception within ten days of the order's issuance, while § 2518 (5) allows for interceptions of thirty days. These and other comparisons reveal a clear intent on the part of the legislature to minimize reliance on electronic surveillance, strictly limiting its use to only those situations statutorily set forth in the fashion prescribed by the act.

the evidence derived from wiretap orders issued on the basis of applications not sworn to by the applicant state's attorneys.

There is no error.

In this opinion BOGDANSKI, LONGO and HEALEY, Js., concurred.

SIDOR, J. (dissenting). I agree that *United States* v. *Giordano,* 416 U.S. 505, 94 S. Ct. 1820, 40 L. Ed. 2d 341, holds that the statute was intended to require suppression where there is a failure to satisfy any of those statutory requirements that *directly* and *substantially* implement the legislative intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device. The United States Supreme Court notes that this is so where the approval was intended to play a *central role* in the statutory scheme and that suppression must follow when it is shown that this statutory requirement has been ignored. Id., 528, 529. The central role in our statutory scheme is the limited number of intercepts permitted, and the required hearing before a three-judge panel of the Superior Court judges.

The applications in question cannot be said to *ignore* the statutory requirement. It is not questioned that the state's attorney executed the application form. Nor is it questioned that he acknowledged the same. These facts show that there was no intent to ignore the requirement of the statute. The substance was there. The prepared form was incorrect. A state's attorney is a public officer; as such he takes an oath of office. A public officer's oath is specific. General Statutes § 1-25.

There is no provision for the form of the oath required in General Statutes § 54-41c. There are model forms in § 1-25 of the General Statutes. Section 54-41c is not helpful to one who must administer an oath under its provisions. Those delegated to draft the application form for the state's attorneys must have found a model in § 1-34 of the General Statutes.

I see no attempt to deceive; nor do I see prejudice to the rights of an accused. The state has made a good faith effort to comply with the statute. As a matter of practice, a state's attorney is available at all wiretap application hearings to implement the application in accordance with § 54-41c (12). Federal judges under 18 U.S.C. § 2518 have used a similar section to take additional evidence to satisfy themselves that a wire intercept order should issue. See *United States* v. *Florea,* 541 F.2d 568 (6th Cir.), cert. denied, 430 U.S. 945, 97 S. Ct. 1579, 51 L. Ed. 2d 792.

Section 54-41c requires, in its subsections 1 through 12, many *statements* to be included in the application. The application requires *"allegations of fact"* which may be based either upon the personal knowledge of the applicant or upon information and belief. Statements and *allegations* of fact do not constitute an affidavit. I cannot agree that the requirement of an oath directly and substantially implements the legislative intention to limit the use of intercept procedures. I would require the legislature to be more specific as to the contents of an affidavit.

We find the requirement of an oath in many situations. We have not set aside actions for failure to

take an oath to prevent a failure of public justice. See *Berger* v. *Guilford,* 136 Conn. 71, 82, 68 A.2d 371.

I would reverse the action of the trial court.