The defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes 14-227a. From that judgment, the defendant has appealed.
Examination of the record discloses the following: On August 4, 1981, the defendant was observed driving his car in a northerly direction on route 32, a public highway located in the town of Montville. His vehicle weaved back and forth across the two northbound lanes, preventing any other motorists from passing him. The same erratic behavior continued on the ramp leading to route 52. Thereafter, while traveling on route 52, the defendant stalled his automobile in the middle of the ramp leading to route 163. He got out of his car, was advised not to operate his automobile by a passing motorist, staggered down the ramp to route 163 and was finally confronted by a police officer in the middle of the highway. The defendant smelled of alcohol. His speech was slurred and incoherent. After failing a number of performance tests, he was advised of his constitutional rights and placed under arrest. The defendant consented to a breath test which was administered and which showed .17 percent of alcohol, by weight, in his blood. The defendant was further advised of his right to have additional chemical tests performed, but he refused.
The defendant applied on October 1, 1981, to participate in the pretrial alcohol education program established by Public Acts 1981, No. 81-446, but was denied entry.
In his appeal, the defendant has raised the following claims of law: (1) whether an applicant is eligible for the pretrial alcohol education system established *Page 691 
by No. 81-446 of the 1981 Public Acts when his arrest predated the act's effective date of October 1, 1981; (2) whether the manner in which he was offered the opportunity to take an additional chemical test effectively deprived him of the right to have that test in violation of constitutional precepts concerning due process; and (3) whether the trial court's refusal to allow the defendant to testify solely as to the matter of his indigency violated the defendant's fifth amendment rights against self-incrimination.
 I
The defendant claims that the proper statutory construction of Public Acts 1981, No. 81-446[1]
extends the benefit of the alcohol education program to those who were arrested for violating14-227a prior to the effective date of the act establishing the program as long as they had not yet been convicted. Section 1(a) of the law refers twice to a violation of 14-227a. The first reference provides that "[t]here shall be a pretrial alcohol education system for persons charged with a violation of section 14-227a of the general statutes." The second reference indicates that the program is only available to those who have "not been convicted of a violation of section14-227a of the general statutes, as amended by section 2 of this act." The defendant contends that the failure to include "as amended by section 2 of this act" in the first reference to 14-227a
evinces an intent by the legislature that the act apply to all persons charged with violating14-227a, regardless of when the violation occurred. *Page 692 
The general rule of statutory construction as codified in General Statutes 1-1 (u) provides that "[t]he passage or repeal of an act shall not affect any action then pending." This provision has been held to mean that "`[s]tatutes should be construed retroactively only, when the mandate of the legislature is imperative.(Citations omitted.) Sherry H. v. Probate Court, 177 Conn. 93, 100,411 A.2d 931 (1979). That an act is amendatory "is immaterial, since its enactment constitute[s] the `passage . . . of an act' within the express provisions of 1-1." Lavieri v. Ulysses, 149 Conn. 396,402-403, 180 A.2d 632 (1962).
A court, in construing a statute, seeks to ascertain the intent of the legislature as it is expressed through the words actually used. State v. Grant, 176 Conn. 17 20, 404 A.2d 873 (1978). Generally, "`no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment.'" (Citations omitted.) Doe v. Institute of Living, Inc., 175 Conn. 49, 58, 392 A.2d 491 (1978). "Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." State v. Grant, supra, 20, citing Sillman v. Sillman,168 Conn. 144, 148, 358 A.2d 150 (1975).
Applying these principles to Public Acts 1981, No. 81-446, we find that the language therein does not mandate a retrospective construction. In determining the legislative intent of the act, we are not confined to only one section of the act as the defendant contends in his interpretation, but we must consider the entire enactment. We thus direct attention to section 4 of the act concerning the pretrial program for accelerated rehabilitation of persons accused of a crime not of a serious nature. This section specifically prohibits anyone charged with a violation of 14-227a, as amended by section 2 of the act, from participation in the accelerated rehabilitation program under 54-56e. *Page 693 
Both sections 1 and 4 became effective October 1, 1981. Hence, it would appear that the intention of the legislature was to initiate the pretrial alcohol education system for persons charged with a violation of 14-227a in lieu of eligibility under the pretrial program for accelerated rehabilitation. Until October 1, 1981, a person charged with violating 14-227a could apply to participate in the accelerated rehabilitation program under 54-56e; after October 1, 1981, an alleged offender could only apply for admission into the pretrial alcohol education system. Thus, the separate parts of the new legislation are reconciled and given a cohesive construction. Fava v. Arrigoni, 35 Conn. Sup. 177, 178-79,402 A.2d 356 (1979).
 II
At trial, the defendant moved unsuccessfully to strike the toxicologist's report previously admitted into evidence on the ground that the arresting officer failed to comply with General Statutes 14-227a (b)(5). That section requires that "the defendant [be] afforded an opportunity to have an additional chemical test performed and the officer who arrested or charged the defendant immediately [inform] him of this right [and afford] him a reasonable opportunity to exercise the same . . . ." The arresting officer, when informing the defendant of his options for a second chemical test, told the defendant that he might have to pay for a blood test if he chose that alternative. The defendant claims that he was indigent and that the officer's statement violated his constitutional right to due process by depriving him of a full opportunity for a second chemical test as required by 14-227a (b)(5).
Even if we assume, arguendo, that the officer did misinform the defendant by his statement and that the defendant was thereby deprived of a fundamental constitutional right as an alleged indigent; State v. Evans, 165 Conn. 61,70, 327 A.2d 576 (1973); any error in admitting the toxicologist's report does not warrant *Page 694 
a reversal of the defendant's conviction. "It is axiomatic that when dealing with an intrusion into the constitutional rights of an accused, `the accused is not required to show that the constitutional error was harmful; rather, the state must show that it was harmless beyond a reasonable doubt.' Aillon v. State, 173 Conn. 334,339, 377 A.2d 1087 (1977); Chapman V: California,386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, [reh. denied, 386 U.S. 987, 87 S.Ct. 1283,18 L.Ed.2d 241] (1967)." Bogdanski, J., dissenting in State v. Briggs, 179 Conn. 328, 341, 426 A.2d 298
(1979), cert. denied, 447 U.S. 912,100 S.Ct. 1000, 64 L.Ed.2d 862 (1980).
While normally it is not an easy task for the state to meet that burden, the record discloses that there was ample evidence to warrant a conviction without the introduction of the toxicologist's report. Evidence was offered regarding the defendant's erratic operation of his car, his abandonment of the car in the middle of the exit ramp, the warning not to drive given by the motorist who stopped to assist him and his demeanor when the police arrived, including his incoherence and inability to pass any of the performance tests administered at the scene. In view of the overwhelming evidence supporting the state's case, the error, if any, was harmless.
 III
Our conclusion on the constitutional question raised by the defendant concerning his inability to pay the cost of a second chemical test is responsive also to the defendant's third claim of error that the court's refusal to allow his testimony concerning indigency violated his fifth amendment rights.
 There is no error.
In this opinion BIELUCH and COVELLO, Js., concurred.