[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this application to vacate an arbitrator's award under C.G.S. 52-418.
FACTS
The parties dispute was "submitted" to arbitration under the compulsion of C.S.G. 7-473c. After a hearing in which both sides participated an award was rendered in favor of defendant. Although the plaintiff participated in the arbitration it never waived its claim that the arbitration made mandatory by C.G.S. 7-473c did not include the question of the establishment of a paramedic unit.
The parties have filed a stipulation dated March 1, 1990 in regard to the admission of some eleven exhibits in "evidence in this matter." The court must assume that the evidence was before the arbitrators.
The parties entered into an agreement dated February 2, 1988 CT Page 3699 for the period July 1, 1987 to June 30, 1989 (the Agreement). Article 43 of the Agreement reads as follows:
"Paramedic Squad
Renegotiate the tentative agreement reached between the Union and City two years ago. Negotiations to commence within 60 days of the signing of this agreement."
The "tentative agreement reached . . . two years ago" was one dated September 25, 1984 under which the parties entered into a tentative memorandum of agreement in regard to EMT and EMT-I.V. workers. The court interprets EMT to be an emergency medical technician. In paragraph 11 of that memorandum the parties state that, "The City and Local 801 I.A.F.F. agree to negotiate the position of Para-Medic when either party requests."
Unfortunately that proposed agreement was rejected by the union membership and thus never became an agreement.
As late as April 10, 1989 the plaintiff was "engaged in negotiations with the Fire Department and the paramedic question [was] a substantial part of the negotiation procedures" (sic).
LAW
There are only three questions presented to this court. The first is whether the establishment of a paramedic program within the Danbury fire department is a subject of binding arbitration under C.G.S. 7-473c. It is clear from the arbitrators' award and the subject matter that it is not. The mandatory duty to negotiate is limited to "any matter affecting wages, hours and other conditions of employment." C.G.S.7-469; 7-470; 7-473c. That the establishment of a paramedic unit does not fit the definition of wages and hours is clear. As to "other conditions of employment it does not fit our Connecticut definitions of those either." Board of Police Commissioner v. White, 171 Conn. 533, 559-560; New Haven v. State Board of Labor Relations, 36 Conn. Sup. 18, 27-29.
The second question is whether there is factual support for the arbitrators' decision that the city agreed to negotiate — bargain — confer — about the subject of the establishment of a paramedic unit by discussing it at some time during the collective bargaining sessions with the union. There is such support and it is after October 1, 1987.
Finally, the third and real question is whether the CT Page 3700 plaintiff's conduct in negotiating the paramedic subject has somehow converted a non-mandatory matter to one which is the subject of mandatory arbitration. As the majority of the arbitrators said in their award, "[t]he majority . . . has decided that since the City and the Union in the Collective Bargaining Agreement agreed to negotiate for the position of Paramedic at the request of either party that the subject is a proper one for the . . . Panel to consider and rule on." The court has examined the entire record with particular attention to the Agreement and the Award but can find no support for that statement of the majority of the arbitrators. The only thing the parties "agreed to renegotiate the tentative agreement." That says nothing about negotiating "at the request of either party." It says nothing about making the issue subject to mandatory arbitration.
Because mandatory arbitration and voluntary arbitration "are fundamentally different" and because government compelled or mandatory arbitration "must accord with procedural and substantive due process" (citations omitted) there is not "complete insulation of statutorily mandated arbitration awards from judicial review for errors of law." American Universal Ins. Co. v. Del Greco, 205 Conn. 178, 187-188. As a result our Supreme Court has "held that a higher level of judicial review of an arbitration award is warranted when arbitration is statutorily mandated." id. 188. That higher level would appear to be "de novo judicial review." id. 189.
Our count has described the standard for de novo judicial "review necessary with regard to determining questions of law." id. 191. The "court must conduct a de novo review of the interpretation and application of the law by the arbitrators." id. 191. Because the facts in Del Greco were stipulated the Supreme Court did not feel it necessary to provide a standard for review of the facts. id. 191.
The majority of the arbitrators never found as a fact that both parties intended that the paramedic issue was to be the subject of mandatory arbitration. All that they did find in this regard was that "the City and the Union agreed to negotiate the position" and that the arbitrators' decision is based on, "A. The negotiations between the parties prior to arbitration; . . ." .
We cannot force a person to forego his substantive and procedural due process rights. Of course, he may voluntarily relinquish them. For something that fundamental there should be proof that he did. That proof is not in this record. Agreeing to negotiate is not agreeing to mandatory binding arbitration. A conclusion that their decision is based on, "A CT Page 3701 the negotiations between the parties prior to arbitration . . ." is proof of nothing in regard to submission to mandatory arbitration because it has no factual predicate.
Motion to vacate is granted.
N. O'Neill, J.