## STATE OF CONNECTICUT *v.* ROY GOODING

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 1287

Argued July 1—decided October 8, 1982

*John R. Donovan,* assistant state's attorney, for the appellant (state).

*Kenneth G. Bartlett,* for the appellee (defendant).

BIELUCH, J. This is an appeal by the state from a dismissal of a criminal prosecution. Permission to file the appeal was granted pursuant to General Statutes § 54-96.

After a series of fires in the city of Meriden and the town of Cheshire, four warrants were obtained by the Meriden police for the arrest of Florencia A. Gooding, wife of the defendant, on charges of arson, larceny and forgery. The warrants were issued between March 4 and July 10, 1981. Upon receiving the first warrant on March 4, the police, as a courtesy to the defendant, a school principal, informed him of the warrant and asked that he bring his wife to headquarters for her arrest. Before the warrant could be served, however, the defendant's wife was admitted to a hospital. On March 30 she was transferred to a private sanatorium from which she escaped on May 4. Subsequent to the initial warrant, three additional warrants were issued by July 10, 1981, for the arrest of the defendant's wife.

On July 14 the police telephoned the defendant to inform him of the four outstanding warrants for the arrest of Mrs. Gooding and to inquire as to her whereabouts. The defendant informed the police that he did not know her whereabouts. By subsequent investigation the police discovered that the defendant's

wife went to California shortly after her escape from the private sanatorium and was staying with the defendant's brother, Ralph Gooding. The brother told the police that he received a call from the defendant's wife, who was in San Francisco and who requested to be picked up by him. Immediately thereafter he telephoned the defendant and informed him of Mrs. Gooding's arrival in San Francisco. Other evidence obtained by the police showed that the defendant did have a telephone conversation with his wife while she was at his brother's house.

On September 22, 1981, a warrant was issued for the arrest of the defendant on the charge of hindering prosecution in the first degree in violation of General Statutes § 53a-166. He was arrested and arraigned the following morning. Bond was posted and the case was continued to October 7 for plea. On that date it was again continued for one week at the request of counsel for the defendant.

On October 13 counsel for the defendant filed the following pretrial motions: (1) a motion for discovery and inspection;[1] (2) a motion to dismiss pursuant to Practice Book § 814 and to the fourth and fourteenth amendments to the United States constitution for (a) lack of personal jurisdiction; (b) insufficient evidence or cause to justify bringing or continuing the criminal information; and (c) lack of probable cause for the defendant's arrest; (3) a motion for production at trial; (4) a motion to suppress evidence; and (5) a motion for bill of particulars.[2]

The defendant pleaded not guilty on October 14 and elected a jury trial. The matter was then continued to October 29 for pretrial conference. Meanwhile, on October 20 counsel filed these further motions on the defendant's behalf: (1) a motion to dismiss the information based on the unconstitutionality of the statute;

---

[1] Furnished by the state on November 17, 1981.

[2] Filed by the state on November 17, 1981.

(2) a motion to dismiss for lack of probable cause for the defendant's arrest; (3) a motion for speedy trial under the sixth amendment to the United States constitution and the constitution of Connecticut, article first, § 8; and (4) a motion for extension of time until November 30 for filing of further pretrial motions.

The pretrial conference originally scheduled for October 29 was continued to October 30, and again to November 2. Following the pretrial conference, the case was placed on the jury docket for December 3. When he appeared on that day, the defendant filed two additional motions: (1) a motion for speedy trial under the federal and state constitutions and (2) a motion to dismiss for failure to prosecute by denying the defendant a speedy trial and failing to answer four prior motions. Those prior motions were "a motion for a speedy trial dated October 19, 1981; a motion to dismiss dated October 19, 1981; a motion to dismiss the information based on unconstitutionality of the statute dated October 19, 1981; a motion to suppress dated October 7, 1981." The court, in response to these latest motions, on the same day assigned the matter for trial as the "second ready case" on January 12, 1982. It also ordered that the "motion to dismiss" be heard on the same date.

On January 8, 1982, the defendant filed a memorandum of law in support of his motion to dismiss based on the unconstitutionality of the statute. The case was called in court on January 12, 1982. At that time the state requested a "two weeks" continuance to bring its principal witness, Ralph Gooding, the defendant's brother, from California. The defendant stated he had no objection. The court granted the continuance to fit its schedule and the case was set down for trial on February 2, 1982. The previously ordered hearing on the "motion to dismiss" was not mentioned in court by anyone.

In the interim several important events transpired. On January 26 the state, in accordance with Practice Book § 833, filed a substitute information incorporating the bill of particulars previously filed. The next day the state filed its memorandum in opposition to the motion to dismiss based on the unconstitutionality of the statute. It also filed a corrected substitute information. On the following day the state filed a further corrected substitute information. The defendant was never put to plea on the substitute information.

On January 28 the motions to dismiss based on the claimed unconstitutionality of General Statutes § 53a-166 and lack of probable cause for the arrest were heard. These were the only pending motions heard by the court. The court reserved its decision on the motions. The next day the defendant filed still further motions. The first was a motion for clarification of the state's bill of particulars contained in the substitute information filed on January 28, alleging that "[t]he defendant cannot prepare his case properly unless the meaning of deception is clarified by the State." The second was a "motion to reargue motion to dismiss and/or to continue the hearing" on his motion to dismiss heard on January 28. That same day the assistant state's attorney issued subpoenas for appearance at trial on February 2 to members of the Meriden police department and to Ralph Gooding, the defendant's brother, addressed to a motor inn in Meriden.

On February 1 the defendant filed a motion for sequestration of the state's witnesses. Also, at 4 p.m. on that day, the court filed memoranda of decisions denying the defendant's two motions to dismiss heard on January 28. Simultaneously the court denied the defendant's two further motions filed on January 29. The record shows no action was ever taken by the court on the other motions filed by the defendant.

The matter was called for trial on February 2. At that time the assistant state's attorney requested a two weeks continuance. Because Ralph Gooding advised the state less than two days before trial of his refusal to come voluntarily from California to testify in this prosecution against his brother, the state needed the trial postponement to prepare an application under General Statutes § 54-82i (c) for a judicial order requiring the attendance for testimony in this criminal prosecution of the out of state witness. The defendant objected to the continuance and requested a dismissal "for failure to prosecute with diligence." The court overruled the objection and granted a "final" continuance to February 23, the extra week being given to meet the convenience of defense counsel. The state was warned by the trial judge, however, that if it "is not ready to proceed at that time, I will entertain a motion to dismiss."

There the matter stood until the next day when the trial judge, acting sua sponte, and, without giving notice or opportunity to be heard to any of the parties, took the action that is the subject of this appeal. After private consideration of the continuance of the trial, the court prepared a memorandum of decision, which it filed the following morning, February 4, before the opening of court, ruling that "the court, on its own motion, hereby terminates the further continuation of this matter and hereby dismisses the information against the accused." To explain its reason for taking this action, the court stated: "Upon further reflection, the court has decided to review the history of this matter to determine whether the granting of a further continuance was, under the totality of the circumstances, fair and proper." The proceedings were briefly summarized as follows: "[T]his case was previously continued eight times." On October 20, 1981, the defendant filed a motion for a speedy trial. Thereafter, the court, on December 3, ordered that the case be set down as the second ready jury trial for

January 12, 1982, and "further ordered that these two cases take precedence over all other cases including those of incarcerated prisoners awaiting trial." On the assigned trial date the first scheduled jury trial was withdrawn from the docket, advancing this case to the first case for that day. The state, however, requested and received a continuance because of a problem in obtaining its witness from California, to February 2, when the court granted a further continuance for three weeks. The court further found that on at least two occasions the defendant was prepared to go to trial "pursuant to direct orders of the court."

From this simple recital of facts, the court, while acknowledging "that the state has diligently pursued this matter," concluded that the responsibility for the unintentional continuances and delays rested with it, and not the accused. Therefore, it ruled "[i]t would be manifestly unfair to the accused at this stage of the proceedings to grant another continuance to the state" and dismissed the information.[3]

The state has appealed from "the court's decision granting the defendant's motion to dismiss the pending prosecution based upon a speedy trial claim." In its statement of issues submitted for our review, however, the state asserts that the court erred in (1) "dismissing the prosecution on its own motion without an adequate factual explanation" and (2) "refusing to grant a continuance to the State based upon manifest unfairness to the defendant."

It is the claim of the state before us that the reason for the court's dismissal of the information is not clear in its memorandum of decision. Since there was no

---

[3] Practice Book § 819 provides: "If the judicial authority grants a motion to dismiss, he shall specify whether the dismissal is with or without prejudice. If the dismissal is with prejudice, the defendant shall be released, and the prosecuting authority may, where he is entitled by law, appeal the dismissal in the same manner and to the same effect as appeals from final judgments in criminal prosecutions. If the dismissal is without prejudice, the defendant shall be released, but the dismissal shall not be a bar to further prosecution for the same offense or offenses."

motion pending before the court, there was no reason for its action.[4] Finally, the state contends that a lack of speedy trial was the only available basis for the court's decision. The defendant, on the other hand, seeks to support the dismissal by maintaining that the court acted within its lawful discretion "in refusing to grant the prosecution another continuance."

Notwithstanding his two motions to dismiss for lack of prosecution, the defendant now contends that want of a speedy trial was not the basis for the court's dismissal of the information and is not an issue before this court. He argues, however, that even assuming the dismissal was based on speedy trial grounds, in whole or in part, the state has failed to show on appeal that the trial court's "decision is clearly erroneous" in view of the whole record. Practice Book § 3060D.

A review of the pleadings and record in this case discloses exaggerated activity on the part of the defendant over the relatively short period of time between his original presentment in court and the dismissal of the information by the judge. Over the span of 133 days, or 4 months and 11 days, the defendant filed multifarious motions requiring the court's action before trial. Many of these were left unresolved by the court for reasons not evident on the record. The vigor of the defense overwhelmed the prosecution and clouded the court proceedings. The court was dissuaded by the early protestations of the defendant for a speedy trial from adhering to the requirements of Practice Book § 977, which provides that "[c]ases shall be placed on the trial list in the order in which the not guilty pleas were entered." The only exceptions to this seriatim scheduling of cases for trial is found in Practice Book § 978, which states that "[t]he judicial authority shall assign for trial on dates certain so much of the trial list as shall be deemed necessary for the proper conduct of the court

---

[4] The record indicates that a number of the motions filed by the defendant were not claimed for hearing and decision by the court.

and shall direct the clerk to distribute a list of the cases so assigned to the counsel of record. Cases shall be assigned for trial in the order in which they appear on the trial list and they shall be tried in the order in which they are assigned for trial, except that the judicial authority may give priority in assignment or trial to the following types of cases: (1) Cases in which the defendant is being held in custody for lack of a bond; (2) Cases in which the judicial authority has granted a motion for a speedy trial; or (3) Cases in which the judicial authority reasonably believes that the pretrial liberty of the defendant presents unusual risks over those of other criminal cases."

The order of the trial court on December 3 that "[t]his is the second ready case for Jan. 12th" exceeded the scope of its authority and was unfair to any defendants in custody pending trial.

The memorandum of decision dismissing the information is equivocal in its precise reasoning and basis for the court's action. No specific conclusion of law is drawn from the findings of fact which themselves are not supported by the record. The court's finding that "this case was previously continued eight times" was without foundation. On September 23, immediately after his arrest, the defendant was presented in court and advised of his constitutional rights. The arraignment was continued to October 7 for plea. On that date the prosecution continued the case until October 14 at the request of counsel, who thereafter filed his appearance on October 13. At the next appearance in court, the defendant pleaded not guilty and elected a jury trial. In accordance with the requirement of Practice Book § 700, the presiding judge assigned the matter for pretrial or disposition conference on October 29. This pretrial conference was successively continued to October 30 and November 2. These pretrial conferences, while requiring, under Practice Book § 702, the attendance of the prosecuting at-

torney, the defense counsel and the defendant, were informal and outside the courtroom. They did not constitute an appearance or continuance in court. Upon the parties' failure to negotiate a plea bargain at these informal meetings, the case then was assigned to the jury trial list for December 3. This case was listed as number nineteen on the jury trial list. Without a hearing, the court granted the defendant's motion for a speedy trial, notwithstanding its knowledge that he was free on bond, and assigned the matter for trial as the second case on January 12. On January 12 the trial was continued at the request of the state to February 2 and thereafter to February 23. It is evident from this review of the case record that there was only one continuance requested by the state and granted by the court prior to February 2.

Similarly, the court's finding that "the responsibility for the continuances and delays, although unintentional, rests with [the state] and not the accused" is unsupported by the record reviewed above. As to the direct orders for trial "[o]n at least two occasions," the record discloses only that the trial was assigned a second preference for January 12. On that day the case was still number nineteen on the jury trial list, subject to the earlier order of priority, and was advanced at the request of the state to February 2. The withdrawal of the first preference trial is not evident in the record.

The court's conclusion that "[i]t would be manifestly unfair to the accused at this stage of the proceedings to grant another continuance to the state" is, we conclude, unsupported by the record and without foundation in law. The active record clearly belies any lack of prosecution by the state. A total of fourteen pretrial motions were filed by the defendant. Of these only five were acted upon by the court. Thus, nine motions were still outstanding at the time of the dismissal. We also note that the defendant was never

put to plea on the substitute information filed by the state in response to the motion for a bill of particulars. This is significant because under Practice Book § 811, the defendant is given ten days after the entry of a plea to file further pretrial motions. It is clear that, despite the defendant's assertions to the contrary, this matter was not ready to go to trial on February 2, and the grant of the state's request for a further continuance was not "manifestly unfair to the accused." Moreover, fairness to the defendant is not the test by which we measure the defendant's right to speedy prosecution or trial.

It is relevant, therefore, that we consider the available constitutional claim of deprivation of the defendant's right to a speedy trial. In *Barker* v. *Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the United States Supreme Court established a four-prong balancing test for determining whether a particular defendant has been deprived of this fundamental right: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id., 530. "[N]one of these factors standing alone would demand a set disposition; rather it is the total mix which determines whether the defendant's right was violated." *State* v. *Nims,* 180 Conn. 589, 592, 430 A.2d 1306 (1980).

Applying these criteria to the present case, it is clear that there has been no such deprivation. The defendant was arrested on September 23 and the information was dismissed on February 4. The total time that elapsed was only four months and eleven days. The case proceeded without delay by the state until January 12, 111 days after the arrest and the original presentment, when the state requested its first continuance. The reason for the later delay of twenty-two days was the unexpected unwillingness of the state's primary witness, the defendant's brother, to testify voluntarily as he had led the prosecutor to

believe he would. In *State* v. *Troynack,* 174 Conn. 89, 384 A.2d 326 (1977), our Supreme Court held that a delay of over eighteen months due to an overcrowded docket was not a violation of the defendant's right to a speedy trial. In so holding, the court stated: "Although the government has the ultimate responsibility for according the accused a speedy trial, unintentional delays caused by overcrowded dockets may be weighed less heavily against the state than intentional delay." Id., 93. Here the delay was clearly unintentional and unanticipated.

The third factor is the assertion of the right by the defendant. There can be no dispute that the defendant moved for a speedy trial on two occasions. This factor weighs in his favor but only slightly in view of the totality of the circumstances.

The final consideration is the prejudice to the defendant caused by the delay. " 'Prejudice . . . should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect. . . . [The United States Supreme] Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' *Barker* v. *Wingo,* supra, 532 . . . ." *State* v. *Troynack,* supra, 93–94. The defendant in the present case was not incarcerated. Moreover, nothing in the record indicates that his defense was impaired. Finally, while it may be true that the delay caused the defendant some anxiety, especially in view of his position in the community, there is no claim that he suffered excessive anxiety or concern.

Reviewing the relevant factors, we find that although the defendant did properly assert his right to a speedy trial, the delay was not unreasonably long. There was good reason for the unintentional delay on the part of the state, and the defendant failed to claim

or show that he was prejudiced by the short delay here. Accordingly, we conclude that the defendant was not denied his right to a speedy trial.

The court, in acting sua sponte after a prior ruling without notice to counsel and opportunity to be heard, denied a basic right to each party to a fair hearing in a judicial proceeding. Due process consists of two fundamental rights: (1) notice of hearing and (2) opportunity to be heard. *Lechner* v. *Holmberg,* 165 Conn. 152, 156, 328 A.2d 701 (1973). By acting as it did to reconsider in private a ruling which had been made after hearing both parties, the court denied the state its constitutional right to due process, and any action taken by it at such time is illegal and void. The basis for the court's action on February 3 is not clear from the memorandum of decision. It would seem from the language of the memorandum that the court was reconsidering the defendant's motion to dismiss the criminal proceeding for the state's failure to prosecute, which the defendant raised on February 2 in objection to the state's request for its last continuance and which was, in effect, denied by the grant of the continuance. While the recorded allowance of a continuance on February 2 was the considered judgment of the court, and while no basis existed for reopening this judgment, especially sua sponte, the court should at least have furnished notice to the parties of proposed reconsideration and opportunity to be heard thereon. It erred in depriving them of due process in this regard. The expeditious disposition of criminal business and the rendering of justice require that courts be fair and reasonable not only to the defendant, but to the state and its citizens, represented by the prosecutor, as well.

There is error, the judgment dismissing the information is set aside and the case is remanded for restoration to the jury docket and prosecution according to law.

In this opinion DALY and COVELLO, Js., concurred.