STATE OF CONNECTICUT *v.* ROBERT FORMICA
(2613)

DUPONT, C.P.J., HULL and BORDEN, Js.

Argued January 16—decision released April 2, 1985

*Frank A. Iannotti,* deputy assistant state's attorney, for the appellant (state).

*Cornelius J. Ivers,* with whom, on the brief, was *Patrice S. Noah,* for the appellee (defendant).

BORDEN, J. This case involves the issue of whether the failure of the state timely to serve the defendant with an inventory of an authorized wiretap requires the suppression of the evidence gathered by the wiretap. The trial court granted the defendant's motions to suppress the evidence and to dismiss the charges against him with prejudice. The state, with the permission of the trial court, appealed. General Statutes § 54-96; Practice Book § 819. We find no error.

The facts are not in dispute. On February 23, 1983, a three judge panel granted, pursuant to General Statutes § 54-41d, an application to intercept wire communications on a particular telephone line from February 23, 1983, through March 9, 1983. As required by General Statutes § 54-41k,[1] the order provided that within ninety days from March 9, 1983, an inventory be served on persons not named in the application or order but whose communications were intercepted, noting the fact of the order, its date, its period of authorization

---

[1] General Statutes § 54-41k provides as follows: "SERVICE OF NOTICE OF INTERCEPTION; INSPECTION OF INTERCEPTED COMMUNICATIONS, APPLICATIONS AND ORDERS; POSTPONEMENT OF SERVICE. Within a reasonable time but not later than ninety days next succeeding the termination of the period of an order or extensions thereof, the issuing or denying panel may cause to be served on the persons named in the order or the application, and shall cause to be served on persons not named in the order or application whose communications were intercepted, an inventory which shall include notice of the fact of the entry of the order or the application; the date of the entry and the period of authorized interception, or the denial of the application; and the fact that during the period wire communications were or were not intercepted. The panel shall make available to such person or his counsel for inspection the intercepted communications, applications and orders immediately upon the filing of a motion requesting such information. On an ex parte showing of good cause approved unanimously by the panel the serving of the inventory required by this section may be postponed for a period not to exceed sixty days. Not more than one such postponement shall be authorized and under no circumstances shall the serving of the inventory required by this section be made later than one hundred fifty days after the termination of the period of an order or extensions thereof."

and the fact of any intercepted communications.[2] The defendant was not a person named in the application or order. Pursuant to the order, the police monitored the telephone line from February 24, 1983, through March 4, 1983. Between February 28, 1983, and March 4, 1983, the defendant called the telephone number which was the subject of the order and relayed sports bets.

On the basis of these calls, a warrant was issued for his arrest on one count of professional gambling, in violation of General Statutes § 53-278b, and two counts of transmission of gambling information, in violation of General Statutes § 53-278d (a). The defendant was arraigned on these charges on May 20, 1983, at which time he was given a copy of the affidavit underlying the arrest warrant. That affidavit detailed the entry of the order, its date, its period of authorization and the conversations intercepted. On August 18, 1983, the defendant was served with an inventory of the wiretap under General Statutes § 54-41k. The state does not dispute that the service of the inventory on the defendant was not within the ninety day period set by the statute and was, therefore, in literal violation of the order of the panel.

General Statutes § 54-41m provides for suppression of the contents of any intercepted wire communication or evidence derived therefrom on the ground, inter alia, that "the interception was not made in conformity with the order of authorization or approval." The state argues that, because the defendant was served within the ninety days with a copy of the arrest warrant affidavit containing the same information as the inventory, in the absence of a showing of prejudice by the defendant or bad faith by the state, the purpose of the stat-

---

[2] Although the record here does not contain the order, both parties agreed at oral argument that the order formally complied with the statutory mandate.

ute was fulfilled, and that this substantial compliance was sufficient to avoid the remedy of suppression.[3] We disagree.

We do agree that not every violation of the wiretap statute requires suppression. In deciding whether a violation requires suppression, "it is necessary to look to the state act to determine whether the particular requirement not followed was intended by the legislature to be a substantive part of a scheme seeking to limit the use of 'this extraordinary investigative device.' " *State* v. *Grant,* 176 Conn. 17, 25–26, 404 A.2d 873 (1978). We hold that strict compliance with the service of inventory requirement was intended by the legislature to be a substantive part of such a scheme, and that failure of such compliance requires suppression under General Statutes § 54-41m.

First, the language of General Statutes § 54-41k is mandatory. It provides that, as to persons named in the order, the panel "may" require service of an inventory, but as to persons, like the defendant, not named in the order the panel "shall" require such service. Indeed, before 1982 this language was reversed; service was mandatory on named persons and discretionary on unnamed persons. General Statutes (Rev. to 1981) § 54-41k.[4] In 1982, the legislature made service

---

[3] The state does not argue that, because the interception had already occurred when the violation took place, the interception was not one which was "not made in conformity with the order . . . . " General Statutes § 54-41m. Indeed, such an argument would prove too much. It would countenance a total disregard of the requirement of General Statutes § 54-41k that the inventory be served within ninety days from the termination of the order, since it would permit the use in evidence of the intercepted communication even in absence of any service of an inventory, subject only to the requirement of General Statutes § 54-41*l*. General Statutes § 54-41*l* requires, in general terms, that as a precondition of use in evidence of an intercepted communication a copy of the application and order be served on the aggrieved person thirty days before the trial.

[4] Prior to 1982, the statute provided in pertinent part: "Within a reasonable time but not later than ninety days next succeeding the termina-

discretionary on persons named in the order and mandatory on unnamed persons, by changing in the first sentence of the statute the word "shall" to "may," and changing "and such other parties to intercepted communications as the panel *in its discretion may determine* is in the interest of justice" to "and *shall cause to be served* on persons not named in the order or application whose communications were intercepted." (Emphasis added.) Public Acts 1982, No. 82-368, § 8. Compare footnotes 1 and 4, supra. Furthermore, the last two sentences of General Statutes § 54-41k, which permit an extension of the ninety day period to 150 days, both speak of the service "of the inventory *required by this section* . . . ." (Emphasis added.) Neither this section nor § 54-41m, which provides for a motion to suppress, refers to substantial compliance with the act or prejudice to the defendant.

Second, the cases interpreting the wiretap act have consistently done so in a strict fashion. See *State* v. *Ross,* 194 Conn. 447, 459, 481 A.2d 730 (1984) ("examination of the plain language of General Statutes § 54-41a et seq. quickly makes it abundantly clear that the legislature sought to limit carefully such intrusions"); *State* v. *Thompson,* 191 Conn. 360, 372, 464 A.2d 799 (1983), cert. denied, 465 U.S. 1006, 104 S. Ct. 999, 79 L. Ed. 2d 231 (1984) (noting "a strict approach on the part of our legislature with respect to the minimization question"); *State* v. *Grant,* supra, 26 n.3 ("[t]hese and other comparisons reveal a clear intent on the part of the legislature to minimize reliance on electronic surveillance, strictly limiting its use to only those situations statutorily set forth in the fashion prescribed by the act"); *State* v. *Assuntino,* 180 Conn. 345, 349, 429

tion of the period of an order or extensions thereof, the issuing or denying panel shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the panel in its discretion may determine is in the interest of justice, an inventory . . . . " General Statutes (Rev. to 1981) § 54-41k.

A.2d 900 (1980) ("authority to wiretap that is contained in General Statutes § 54-41c (8) requires strict compliance" with the statutory requirements.)

Third, the history of our wiretap act is replete with strong declarations of legislative intent that it be strictly construed, and that its carefully and narrowly drawn provisions reflect a delicate balancing of interests which placed great weight on safeguards to protect individual liberties. See 14 S. Proc., Pt. 2, 1971 Sess., pp. 844, 849, 856, 869, 870, 870A, 900, 911. Indeed, in the legislative debate, the provision requiring the ninety day postintercept notice was characterized as "very important." Id., 870. It is clear, therefore, that the legislative mind was acutely aware that the act impinged on the "right to be let alone—the most comprehensive of rights and the right most valued by civilized men"; *Olmstead* v. *United States,* 277 U.S. 438, 478, 48 S. Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting); and sought to limit that process as much as legitimately possible. This history counsels strongly that we be very cautious about reading into the act exceptions which would erode those safeguards for the individual.

Finally, the provision at issue plays a substantive part in the scheme of the act seeking to limit the use of wiretaps as an investigative device. *State* v. *Grant,* supra, 25–26. A person whose property which has been seized by a search ordinarily is aware of that fact and may, if the property is not contraband and the seizure was unlawful, regain it. A person whose conversation has been intercepted, however, is unaware of that fact and cannot regain his lost privacy, whether the loss was lawful or unlawful. The service of the ninety day postintercept inventory within the required time period on one who was not a named target of the tap alerts him promptly to the fact that his conversations were intercepted, thus enabling him to obtain from the panel

copies of his conversations, the applications and orders "immediately upon the filing of a motion requesting such information"; General Statutes § 54-41k; and enabling him promptly to seek his civil remedies under General Statutes § 54-41r.

A strict reading of the inventory service requirement will further the important role which it plays in the wiretap scheme. The legislature intended strictly to limit wiretaps, not only as to when and how they may be obtained, but also as to their execution "in the fashion prescribed by the act." *State* v. *Grant,* supra, 26 n.3. This process of execution necessarily includes a postintercept procedure requirement like the one at issue here, which directly implicates the individual and triggers important rights which the act gives him. Requiring strict compliance with this requirement will serve two purposes. It will be a prophylaxis against administrative oversight which could, in cases unlike this one, unduly delay actual notice to one whose conversations were overheard. It will also be a guarantee that, in cases like this one where the person overheard was subsequently arrested, before the state may use the fruits of its wiretap against him it must follow the important dictates of the statute that permitted it to wiretap in the first place. This "approach is necessary to ensure the integrity of the wiretap statute and of the functioning of the judiciary with respect to it." *State* v. *Thompson,* supra, 383.

We recognize that, as the state argues, federal courts have held that both the mandatory and discretionary postintercept notice requirements of the federal wiretap statute require only substantial compliance and a lack of prejudice to the defendant. See, e.g., *United States* v. *Fury,* 554 F.2d 522 (2d Cir. 1977), cert denied, 436 U.S. 931, 98 S. Ct. 2831, 56 L. Ed. 2d 776 (1978); *United States* v. *Civella,* 533 F.2d 1395 (8th Cir. 1976), cert. denied, 430 U.S. 905, 97 S. Ct. 1174, 51 L. Ed.

2d 581 (1977); *United States* v. *Wolk,* 466 F.2d 1143 (8th Cir. 1972); see also *United States* v. *Donovan,* 429 U.S. 413, 439, 97 S. Ct. 658, 50 L. Ed. 2d 652 (1977) (discretionary postintercept notice is designed to assure community that wiretaps are reasonably used, not to serve as independent restraint on resort to wiretap procedure). We find these cases unpersuasive in interpreting our statute. It is well settled "that our own wiretap statute is in many ways more stringent than the federal act." *State* v. *Thompson,* supra, 371; *State* v. *Grant,* supra, 25–26 n.3. A brief perusal of the two statutes; General Statutes §§ 54-41a through 54-41t and 18 U.S.C. §§ 2510 through 2518; vividly illuminates that stringency. Moreover, the federal statute does not come to us with the judicial gloss, legislative history and emphasis on the importance of the postintercept notice which we have already identified with respect to our statute.

There is no error.

In this opinion the other judges concurred.