UNITED STATES of America, Appellee,

v.

Salvatore F. SPADACCINO, Appellant.

No. 866, Docket 85–1424.

United States Court of Appeals,
Second Circuit.

Argued March 11, 1986.

Decided Aug. 27, 1986.

Jeremiah F. Donovan, Asst. U.S. Atty., New Haven, Conn. (Stanley A. Twardy, Jr., U.S. Atty. for District of Connecticut, Steven A. Cash, Law Student Intern, New Haven, Conn., on brief), for appellee.

Sigmund L. Miller, Bridgeport, Conn. (George P. D'Amico, Miller and Rosnick,

P.C., Bridgeport, Conn., on brief), for appellant.

Before KEARSE, CARDAMONE, and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Salvatore F. Spadaccino appeals from a judgment of conviction entered following his plea of guilty in the United States District Court for the District of Connecticut, T.F. Gilroy Daly, *Chief Judge,* on one count of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871 (1982). As part of his plea agreement, Spadaccino was permitted to reserve for appeal his contention that the evidence against him should have been suppressed on the ground that it was seized in violation of the Connecticut laws governing wiretapping, Conn.Gen.Stat.Ann. § 54–41 (West 1985). The district court ruled that there had been a violation of the postinterception notice provision of § 54–41k but denied suppression on the basis of the good-faith exception to the exclusionary rule announced in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 702 (1984). On appeal, Spadaccino contends that the *Leon* good-faith exception is inapplicable to excuse a violation of the state statute. We agree, but we uphold the denial of suppression on other grounds, and we therefore affirm the judgment of conviction.

## I. BACKGROUND

On June 2, 1983, a panel of three Connecticut Superior Court judges (the "wiretap panel"), acting pursuant to Conn.Gen.Stat.Ann. § 54–41, authorized the police to intercept telephone communications at the residence of one Leroy Capers in Bridgeport, Connecticut, in order to gather evidence of narcotics sales. The wiretap order provided that the interception was to continue until midnight on June 16, but also stated that "[t]he interception shall automatically terminate when the authorized objective has been first obtained," and that "[t]his order ... shall terminate upon the attainment of the authorized objective ... or in any event within 15 days next succeeding the date of issuance of this order."

On June 14, the police intercepted three conversations between Capers and a man referred to as "Sal"; "Sal" used a telephone listed to Spadaccino at his residence in Shelton, Connecticut. The conversations indicated that "Sal" was about to deliver drugs to Capers. At approximately 1 p.m., a police detective observed Spadaccino enter Capers's apartment building carrying a plastic bag containing white powder and leave empty-handed approximately three minutes later. Five minutes later, the police executed a search warrant of Capers's apartment, where they found a bag, similar to the one Spadaccino had been seen carrying, which contained cocaine.

Using this information, the police later that day obtained a warrant to search Spadaccino's home in Shelton, Connecticut. The search uncovered no evidence of narcotics sales but did turn up a sawed-off shotgun. The shotgun was turned over to federal authorities, resulting in his eventual indictment, in February 1985, in the present case.

In the meantime, Spadaccino and Capers were arrested on June 14, 1983, and charged with violations of the state narcotics laws. The police continued monitoring the wiretap on June 15, but conducted no monitoring on June 16.

Conn.Gen.Stat.Ann. § 54–41k (the "notice provision") provides that the wiretap panel "not later than ninety days next succeeding the termination of the period of an order ... shall cause to be served on persons not named in the order or application whose communications were intercepted, an inventory which shall include notice [of the order and the interception]." Spadaccino was not named in the wiretap application or order, and on September 14, 1983, the wiretap panel mailed notice to him that his conversations had been intercepted. September 14 was 90 days after June 16, the latest date authorized by the wiretap order, and 91 days after June 15, the last

day of actual monitoring pursuant to that order.

Following his indictment in February 1985 on the federal firearms charge, 26 U.S.C. §§ 5861(d) and 5871, Spadaccino moved to suppress the evidence of his possession of the shotgun on the ground that the 90–day notice requirement of § 54–41k had been violated. Spadaccino relied on an April 1985 decision of the Appellate Court of Connecticut, *State v. Formica*, 3 Conn. App. 477, 489 A.2d 1060, *certif. denied*, 196 Conn. 806, 494 A.2d 903 (1985), which held that failure to meet the 90–day requirement of § 54–41k required the suppression of evidence derived from a wiretap order.

Following an evidentiary hearing, the district court denied Spadaccino's suppression motion. The court found that the wiretap authorization had terminated on June 15, the last day of monitoring, and that the failure to mail notice to Spadaccino until September 14, 91 days later, violated § 54–41k. The court ruled, however, that although *Formica* might indicate that the evidence should be suppressed, suppression should be denied since "the shotgun was seized by police officers who had a reasonable and good faith belief in the validity of the warrant," and the case thus fell "squarely under the good faith exception to the exclusionary rule as defined in *United States v. Leon*," 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 702 (1984).

Thereafter, Spadaccino agreed to plead guilty to the charge against him. As part of his plea agreement, approved by the court, he was permitted to reserve for appeal the issue of whether the district court erred in denying his suppression motion. Spadaccino was sentenced to a prison term of five years, execution of which was suspended, and was placed on probation for five years and required to pay a $10,000 fine. This appeal followed.

## II. DISCUSSION

On appeal, Spadaccino contends that the good-faith exception announced in *Leon* is inapplicable to his case and that *Formica* required the suppression of the evidence against him. The government argues that the district court erred in finding that there had been a violation of the wiretapping statute's notice requirement but that if the court was correct in that finding, it was also correct in denying the motion to suppress. We conclude that we need not reach the question of whether there was a violation of the notice requirement since, even if there was a violation, the rule announced in *Formica* should not be applied retroactively to the present case.

### A. The Formica Decision

In *State v. Formica*, the Appellate Court of Connecticut considered a motion to suppress evidence seized as a result of a wiretap conducted pursuant to an order under the state wiretap statute. The wiretapping order, which had not mentioned Formica, authorized interception of communications from February 23, 1983, through March 9, 1983. Monitoring took place from February 24, 1983, through March 4, 1983. On the basis of this surveillance, Formica was arrested on gambling charges and was arraigned in May 1983. On August 18, 1983, Formica was served with the inventory of the wiretap. He moved to suppress on the ground that the inventory was not served on him within the required 90–day period. The state conceded noncompliance with the 90–day requirement but contended that since the information contained in the August 18 inventory had been provided to Formica within the 90–day period in the affidavit that accompanied the warrant for his arrest, the state had substantially complied with the statute. The state court rejected the substantial compliance argument and upheld the suppression of the evidence.

The *Formica* court noted that the notice provision had been included by the state legislature in order to minimize the intrusiveness of wiretaps on the privacy of individuals, and stated as follows:

The service of the ninety day post-intercept inventory within the required time period on one who was not a named target of the tap alerts him promptly to

the fact that his conversations were intercepted, thus enabling him to obtain from the panel copies of his conversations, the applications and orders "immediately upon the filing of a motion requesting such information"; General Statutes § 54–41k; and enabling him promptly to seek his civil remedies under General Statutes § 54–41r.

3 Conn.App. at 482–83, 489 A.2d at 1063. The court ruled that, while not every violation of the Connecticut wiretapping statute would require suppression, violation of the notice provision did require suppression:

> We hold that strict compliance with the service of inventory requirement was intended by the legislature to be a substantive part of such a scheme, and that failure of such compliance requires suppression under General Statutes § 54–41m.

*Id.* at 480, 489 A.2d at 1062.

The court held that since notice was mandatory, substantial compliance along the lines suggested by the state was insufficient and that suppression was required even if the defendant could show no prejudice resulting from the violation. The court correctly noted that in these respects the Connecticut statute was stricter than the federal wiretapping statute. *See* 18 U.S.C. §§ 2510–2520 (1982); *id.* § 2518(8)(d) (the authorizing judge has discretion to determine whether notice should be sent to a person not named in wiretap authorization); *United States v. Donovan,* 429 U.S. 413, 438–39 & n. 26, 97 S.Ct. 658, 673 & n. 26, 50 L.Ed.2d 652 (1977) (unnotified defendant entitled to suppression only upon a showing of prejudice); *United States v. Fury,* 554 F.2d 522, 528–29 (2d Cir.1977) (same), *cert. denied,* 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). *See also State v. Grant,* 176 Conn. 17, 25, 404 A.2d 873, 878 (1978) ("Connecticut scheme is ... in many respects more stringent than the equivalent federal act").

B. *Whether the Present Notice Was Timely*

In the present case, the district court found that the objective of the surveillance had been achieved on June 15, 1983. This is a finding of historical fact that should be sustained on appeal unless it is clearly erroneous. *See United States v. Rodriguez,* 786 F.2d 472, 476 (2d Cir.1986). We conclude that, in light of the cessation of monitoring on June 15, the court's inference that the objective had been achieved on that date is not clearly erroneous.

This does not necessarily mean, however, that the 90–day period was measurable from June 15, for § 54–41k measures the 90 days from "the termination of the period of an order." We find this language somewhat ambiguous. Since the order both specified an automatic expiration date and stated that surveillance was to cease earlier if the objective of the surveillance was achieved earlier, it is not entirely clear whether statute's phrase "the period of an order" refers to the period specified or to the possible foreshortened period. The *Formica* court had no need to answer this question since, although the monitoring there ceased five days before the end of the authorized period, notice was not served until more than 160 days after the later of the two dates.

This Court, in construing a similar phrase used in the judicial sealing requirement imposed by the federal statute, 18 U.S.C. § 2518(8)(a) ("Immediately upon the expiration of the period of the order" the wiretap tape shall be presented to a judge for sealing), has thus far declined to decide "the difficult question of whether sealing delays must be calculated from the expiration date of the order or from the date its objective is achieved," *United States v. Badalamenti,* 794 F.2d 821, 825 (2d Cir.1986); *United States v. Vazquez,* 605 F.2d 1269, 1278 n. 21 (2d Cir.1979), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1980). We likewise decline here to decide the question raised under the Connecticut statute as to which of the two dates triggers the notice period, since even if the earlier date started the running of that period, we conclude that suppression was not warranted in the present case.

## C. Whether Suppression Was Required

The district court found that Spadaccino's "shotgun was seized by police officers who had a reasonable and good faith belief in the validity of the warrant" obtained on the basis of the intercepted communications, and it concluded that suppression of the weapon should be denied in light of the good-faith exception to the exclusionary rule announced in *United States v. Leon.* Although we conclude that suppression was not warranted, we do not agree that *Leon* applies here.

 In *Leon*, the Supreme Court held that "the Fourth Amendment exclusionary rule [does not] bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900, 104 S.Ct. at 3409. *Leon,* however, is a judicially crafted exception to an exclusionary rule that is a judicial creation. The Fourth Amendment exclusionary rule is based on the Supreme Court's weighing of the costs and benefits of the exclusion of evidence as a deterrent to police conduct that violates certain federal constitutional rights. In the present case, in contrast, suppression is required by a statutory mandate. Thus, in determining such matters as the nature of the rights to be protected, the conduct that constitutes a statutory violation, and the remedy warranted by a violation, it is appropriate to look to the terms of the statute and the intentions of the legislature, rather than to invoke judge-made exceptions to judge-made rules. *See United States v. Giordano,* 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974) (the suppression required by the federal wiretap statute is not limited to cases where there has been a constitutional violation since "Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device."); *State v. Grant,* 176 Conn. at 25, 404 A.2d at 877–78 (quoting *Giordano* ).

Here, the balancing of interests and the weighing of costs and benefits to determine whether evidence obtained without compliance with the Connecticut statute should be suppressed even where the law enforcement officers have proceeded in good faith has already been done by the Connecticut legislature. The Connecticut Appellate Court in *Formica* has interpreted the statute as requiring suppression for failure to comply with the notice requirement of § 54–41k even if law enforcement officers have substantially, but not technically, complied. 3 Conn.App. at 479–80, 489 A.2d at 1062. The strictness of this reading suggests that the state court surely would not adopt a good-faith exception to the notice requirement of the statute, for such an exception could well swallow whole the notice requirement. It would be rare for a court to find that a seizure of evidence, pursuant to an otherwise valid search warrant, was not in good faith because *thereafter* notice was not timely mailed.

 The intention manifested by the legislature is entitled to deference from the courts, and the state court's interpretation of its state legislature's intention is entitled to deference from the federal courts. Thus, we conclude that the district court was not entitled to engraft upon the notice requirement of the Connecticut wiretapping statute an exception for actions of law enforcement officers carried out in good faith.

Nonetheless we conclude that the district court did not err in refusing to suppress the evidence seized in the present case, because the rule announced in *Formica* should not be applied retroactively to this case. *See United States v. Aiello,* 771 F.2d 621 (2d Cir.1985).

 Although normally the admissibility of evidence in a federal criminal prosecution is governed by federal law, *e.g., Preston v. United States,* 376 U.S. 364, 366, 84

S.Ct. 881, 882, 11 L.Ed.2d 777 (1964); *see United States v. Sotomayor,* 592 F.2d 1219, 1223–24 (2d Cir.) (collecting cases), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), we noted in *Sotomayor* that we might require the exclusion of evidence obtained in violation of a substantive provision of a state statute designed to protect an individual's right of privacy, where the state courts would exclude the evidence, even though the state provision is stricter than corresponding federal law. *See also United States v. Aiello,* 771 F.2d at 627. Since *Formica* interpreted the notice provision of the Connecticut law as one designed to give substantive protection to the privacy interests of a person not named in a wiretap order, and the protection given is plainly greater than what would be accorded by federal law, *see* Part II.A. above, the rationale of *Sotomayor* might, on the face of it, appear to warrant exclusion of the evidence seized from Spadaccino.

In *United States v. Aiello,* however, we ruled that we would not apply such more stringent state exclusionary rules in a federal prosecution where (1) the violation of the statute occurred before the restrictive interpretation of the state provision had been given by the state court, (2) the actions of the law enforcement officers were found to be in good faith, and (3) the interests of justice would not be thwarted by admission of the evidence:

> [A]lthough federal law normally controls the admissibility of evidence in federal criminal trials, we will apply more stringent state statutory requirements with respect to wiretap authorizations that are designed to protect an individual's right of privacy. However, when the more stringent requirements result from new state court interpretations of state laws governing evidence-gathering, and when the state officer, prior thereto, relies in good faith on pre-existing less stringent state court interpretations, we will not apply the new interpretations retroactively, at least when to do so would not serve the interests of justice.

*Id.* at 627 (citing cases). *See United States v. Peltier,* 422 U.S. 531, 537, 95 S.Ct. 2313, 2317, 45 L.Ed.2d 374 (1975), (evidence seized in a manner held by later decisions to be unlawful may be introduced "if law enforcement officials reasonably believed in good faith that evidence they had seized was admissible at trial"); *United States v. Sotomayor,* 592 F.2d at 1226–27 (police should not be penalized for failure to anticipate New York courts' later interpretation of sealing provision of New York wiretapping statute). The conditions laid down by *Aiello* for admission of the evidence in a federal trial are met in the present case.

The *Formica* decision in 1985 was apparently the first authoritative state court interpretation of the 90–day notice requirement of § 54–41k. Both the search of Spadaccino's home on the basis of the information obtained through the wiretap and the mailing of notice to Spadaccino occurred in 1983, nearly two years before the *Formica* decision. The district court found that the law enforcement officers had obtained the search warrant for Spadaccino's house and conducted the search in good faith. There plainly is no basis for upsetting this finding; thus, assuming that there was a statutory violation in the timing of the notice to Spadaccino, it occurred months after the good faith search and seizure.

Spadaccino has come forward with nothing to suggest that he suffered any prejudice as a result of the one-day delay in providing him the notice to which he was entitled. We can see no respect in which the interests of justice would be disserved by refusing to suppress the evidence seized.

## CONCLUSION

The judgment of conviction is affirmed.