STATE OF CONNECTICUT *v.* JOANNE NORMA SCOTT
STATE OF CONNECTICUT *v.* ALAN BARBARY
STATE OF CONNECTICUT *v.* JAMES LEE HARRISON
(4347)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued January 14—decision released March 31, 1987

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John J. Kelley,* chief state's attorney, *John Whalen,* assistant state's attorney, and *Kari Anne Pederson,* legal intern, for the appellant (state).

*Steven D. Jacobs,* for the appellee (defendant James Lee Harrison).

*William F. Dow III,* with whom, on the brief, was *Karen Fox Tross,* for the appellee (defendant Alan Barbary).

*Daniel Shepro* relied on the brief of *Steven D. Jacobs,* for the appellee (Joanne Norma Scott).

HULL, J. These three cases were tried together and consolidated on appeal. On January 25, 1984, a three-judge panel authorized the interception of wire communications of a person other than one of the defendants, in connection with an alleged large-scale drug operation. The period of authorized interception was from January 25, 1984 to February 8, 1984. Alan Barbary was not a target of the investigation, but his communications were intercepted pursuant to the wiretap order. These communications led to the February 5, 1984 arrest of Barbary and the search of a residence he had been occupying at 118 Shell Avenue, Milford. The search yielded approximately 100 pounds of marihuana, luggage belonging to Barbary, Scott and Harrison, $1978 in cash, two glassine bags of marihuana and other drug related paraphernalia. Scott and

Harrison were present at 118 Shell Avenue and were arrested at that time. All three defendants were charged with possession of marihuana with intent to sell in violation of General Statutes § 21a-278 (b), and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a).

A copy of the search warrant application was not delivered to the defendants within forty-eight hours of the search because the state had obtained an order dispensing with the delivery requirements of General Statutes § 54-33c. On February 22, 1984, the court granted Barbary's motion to produce the application for a search warrant. That document was provided to Barbary's attorney on March 1, 1984, twenty days after termination of the wiretap. The application for the search warrant informed Barbary of the existence of a wiretap order, the date of its issuance, the telephones tapped, the interception of his conversations, and the continuance of the wiretap on the date of his arrest.

All defendants moved to suppress the wiretap evidence and the evidence obtained through the search of Barbary's residence. They jointly claimed suppression on five grounds, only the first of which is pertinent to our inquiry, namely that the wiretap panel had failed to comply with the formal notice requirement of General Statutes § 54-41k.[1] After an evidentiary hearing on the defendants' claim concerning lack of timely

---

[1] General Statutes § 54-41k provides in relevant part: "Within a reasonable time but not later than ninety days next succeeding the termination of the period of an order or extensions thereof, the issuing or denying panel may cause to be served on the persons named in the order or the application, and *shall* cause to be served on persons not named in the order or application whose communications were intercepted, an inventory which shall include notice of the fact of the entry of the order or the application; the date of the entry and the period of authorized interception, or the denial of the application; and the fact that during the period wire communications were or were not intercepted. The panel shall make available to such person or his counsel for inspection the intercepted communications, applications and orders immediately upon the filing of a motion requesting such information." (Emphasis added.)

notice to Barbary, the court granted the defendants' motion to suppress, dismissed the cases and granted the state's motion for permission to appeal. The court apparently relied on the authority of *State* v. *Formica,* 3 Conn. App. 477, 489 A.2d 1060, cert. denied, 196 Conn. 806, 494 A.2d 903 (1985), wherein this court held that the failure to give the defendant statutorily required postwiretap notice invalidated the wiretap and evidence derived therefrom.

The state briefed and argued the following claims of error: (1) the defendants Scott and Harrison were not aggrieved persons under the wiretap statute and therefore were not entitled to suppression of wiretap evidence and evidence seized under a resulting search warrant; (2) noncompliance with the formal ninety-day notice requirement should not result in suppression of lawfully seized wiretap evidence.

Before considering the first claimed error, we must decide if it is properly before us. No such claim was made in the trial court, in the state's preliminary statement of issues,[2] or in its statement of issues. The very first time that such a claim is made is in the state's brief. Thus, we ordinarily would decline to consider this claim. Practice Book § 4185 (formerly § 3063). The rule requiring claims on appeal to have first been made at trial "applies to the state as well as to the defendant." *State* v. *Martin,* 2 Conn. App. 605, 612 B, 482 A.2d 70 (1984),

[2] Although our appellate courts have in the past declined to address issues not properly presented to the court or included in a preliminary or amended statement of issues; *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 617, 495 A.2d 1006 (1985); Practice Book § 4013 (formerly § 3012), effective October 1, 1986, and made applicable to pending appeals by Practice Book § 4189 (formerly § 3166), does not preclude an appellant from raising issues not included in the preliminary statement of issues unless the opposing party is prejudiced thereby. *State* v. *McIver,* 201 Conn. 559, 568 n.3, 518 A.2d 1368 (1986). Although the defendants do not assert that they have been prejudiced by the failure of the state to include such issues in its preliminary statement of issues, we find that the claims nevertheless evade appellate review for other reasons discussed herein.

cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985); *State* v. *Hansen* 8 Conn. App. 26, 28, 510 A.2d 465, cert. denied, 201 Conn. 806, 515 A.2d 379 (1986). To overcome this objection, the state pursues two well trodden avenues.

It first claims the benefit of the case of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and its myriad progeny. *Evans* pronounced only two situations which may constitute exceptional circumstances such that newly raised claims can and will be considered by an appellate court. The first is where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. The second is where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial. Id., 70. The state claims that the second exceptional *Evans* circumstance entitles it to a review of this claim not raised at trial.

The state cites no precedent for its claim that *Evans* can be invoked for its benefit, nor have we discovered such a case. The state claims nevertheless that the record is adequate to review the claim and that the state has been deprived of a fundamental constitutional right and a fair trial.

We have recently had occasion to refine and clarify the appropriate standards for review of the *Evans* claim. "We 'must ask a series of questions when an *Evans* claim is made and answer each in the affirmative before continuing to the succeeding question.' *State* v. *Newton,* [8 Conn. App. 528, 531, 513 A.2d 1261 (1986)]. 'The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review.' Id.

First, does the defendant raise an issue which, by its terms, implicates a fundamental constitutional right?

This question looks solely to whether the label which the defendant places on the claim is constitutional in nature.

Second, is the defendant's constitutional claim adequately supported by the record? This question requires that we review the record in a *limited* way and determine, on the basis of that limited review, whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant." *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891 (1987); *State* v. *Huff,* 10 Conn. App. 330, 333–34, 523 A.2d 906 (1987). To go to the root of the matter, we therefore must decide whether the state has been deprived of a fundamental constitutional right. The state claims that the citizenry is guaranteed due process of law by article first, §§ 8 and 10 of the Connecticut constitution.[3] Article first, § 8 rebuts this argument entirely for it concerns only the rights of defendants. It echoes the language of the fourteenth amendment to the constitution of the United States when it provides that "No persons shall . . . be deprived of life, liberty or property without due process of law." The language of article first, § 10 furnishes no further support for the state's position since it concerns rights of every person.

We do not close the door entirely on such a concept, however. The court in *State* v. *Gooding,* 38 Conn. Sup.

[3] Article first, § 8 of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the *accused* shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury." (Emphasis added.)

Article first, § 10 of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

521, 533, 453 A.2d 774 (1982), found a violation of due process to both parties where the trial court, acting sua sponte after a prior ruling, without notice to counsel and an opportunity to be heard, rendered a different ruling. The *Gooding* court held that the trial court denied the state its "constitutional right to due process." Id., 533.

The resolution of this attempt to add another lane to the *Evans* bypass awaits another day; for, even if we assume arguendo that such a right exists, the state has not shown on the record a scintilla of evidence of a violation of due process concerning the state. There was no erroneous procedural impediment to the state's "due process." The road to *Evans*ville has not yet been detoured through Wallingford.

We do, however, consider the state's claim under the provision of Practice Book § 4185 (formerly § 3063) that "[this] court may in the interests of justice notice plain error not brought to the attention of the trial court. We recognize that the doctrine of plain error should be invoked sparingly." *Berchtold* v. *Maggi,* 191 Conn. 266, 274, 464 A.2d 1 (1983). We note, also, that "whether in the interest of justice we notice this failure [to give a claimed jury instruction] as plain error depends in part on whether the failure was harmful." *State* v. *Brown,* 187 Conn. 602, 613, 447 A.2d 734 (1982). There can be no question of the great harm to the state in the dismissal of charges involving alleged serious drug dealing. We conclude that the dismissal of the charges against Scott and Harrison on the basis of the *Formica* dismissal of charges against Barbary was plainly erroneous.

General Statutes § 54-41m provides in pertinent part: "Any aggrieved person in any trial, hearing or proceeding in or before any court . . . may move to suppress the contents of any intercepted wire communications,

or evidence derived therefrom . . . . " General Statutes § 54-41a (10), in turn, defines the term "aggrieved person" to mean "a person who was a party to any intercepted wire communication, a person against whom the interception was directed, a person named in any order authorizing an interception, or a person having a property interest in any premises involved in any interception." It is clear that the defendants Scott and Harrison are not aggrieved persons and, therefore, have no standing to seek suppression of the wiretap evidence or the fruits derived therefrom. Neither was a party to an intercepted wire communication; neither was named in the wiretap order; and neither established a property interest in any premises involved in the interception. General Statutes § 54-41a; see *Alderman* v. *United States*, 394 U.S. 165, 171, 89 S. Ct. 961, 22 L. Ed. 2d 176, reh. denied, 394 U.S. 939, 89 S. Ct. 1177, 22 L. Ed. 2d 475 (1969).

Scott and Harrison are seeking a free ride on Barbary's coattails. Counsel for Scott and Harrison cite no authority for the proposition that postarrest failure to give notice to Barbary spread out gratuitously to include Scott and Harrison. Nor do Scott and Harrison make a claim of any other grounds of invalidity of the search. They are complete strangers to the wiretap involved here. The search of 118 Shell Street was valid when made.

Finally, extending the *Formica* rationale to those not directly affected by the wiretap will not further the purposes of the wiretap statute as stated in *State* v. *Formica*, 3 Conn. App. 477, 483, 489 A.2d 1060 (1985). A strict reading of the inventory service requirement will further the important role which it plays in the wiretap scheme. The legislature intended to limit wiretaps strictly, not only as to when and how they may be obtained, but also as to their execution in the fashion prescribed by the act. *State* v. *Grant*, 176 Conn.

17, 25–26, 404 A.2d 873 (1978). This process of execution necessarily includes a post-intercept procedural requirement such as the one at issue here, which directly implicates the individual and triggers important rights which the act gives him. Strict compliance with this requirement will serve two purposes. It will be a prophylaxis against administrative oversight which could, in cases unlike this one, unduly delay actual notice to one whose conversations were overheard.[4] It will also be a guarantee that, in cases such as this one, where the person overheard was subsequently arrested, before the state may use the fruits of its wiretap against him, it must follow the important dictates of the stat-

---

[4] The prophylactic necessity of postintercept notice called for in *State* v. *Formica,* 3 Conn. App. 477, 489 A.2d 1060 (1985), finds abundant justification in the notice fiasco involved in this case.

The period of authorized interception was from January 25, 1984 to February 8, 1984. On February 22, 1984, the defendant Barbary filed a motion to reveal and produce the application for the search warrant, claiming that it was necessary for "proper defense" against the charges. That motion was granted by the court, and the document sought was provided to counsel for Barbary on March 1, 1984, twenty days after termination of the wiretap. The application for the search warrant apprised the defendant Barbary of the existence of a wiretap order, the date of its issuance, the telephone facilities tapped, the interception of his conversations pursuant to the wiretap order, and the continuation of the tap on the date of his arrest.

After conclusion of the wiretap, a notification list was given to the wiretap panel, setting forth the names and addresses of persons not named in the wiretap order or application whose conversations had been intercepted. Barbary's name was not on that list. For that reason, when in April, 1984, Barbary sought (under General Statutes § 54-41k) permission to inspect the wiretap application, order, and intercepted communications the wiretap panel denied the request.

In August, 1984, an amendment to the notification list was filed, listing the defendant Barbary's California address but erroneously recited his Connecticut address as 18 Shell Street, Milford, rather than 118 Shell Street, Milford. On September 10, 1984, the wiretap panel sent a formal notification letter under General Statutes § 54-41k to the defendant Barbary at 18 Shell Street, Milford. That letter was returned to the panel by the Post Office, however, with the notation "Moved, left no address."

It was not until September 10, 1984, approximately seven months after the wiretap order ended, that the panel sent notice to Alan Barbary that he had been intercepted.

ute that permitted it to wiretap in the first place. This "approach is necessary to ensure the integrity of the wiretap statute and of the functioning of the judiciary with respect to it." *State* v. *Thompson,* 191 Conn. 360, 383, 464 A.2d 749 (1983), cert. denied 465 U.S. 1006, 104 S. Ct. 999, 79 L. Ed. 2d 231 (1984). Scott and Harrison cannot crowd under the *Formica* umbrella. The court committed plain error in dismissing the charges against Scott and Harrison.

Concerning the defendant Barbary, the state seeks to have this court overrule *State* v. *Formica,* supra.[5] In *Formica,* this court held that General Statutes § 54-41k, which provides that timely service of the inventory of a wiretap on persons not named in the wiretap order, but whose communications were intercepted as a result of the wiretap, is mandatory. Suppression of any such intercepted communication and of any evidence derived therefrom is by General Statutes § 54-41m required in the event that the state fails to comply strictly with the requirement of General Statutes § 54-41k. Because the defendant was not named in the order authorizing the wiretap and because he was not timely served with an inventory of the wiretap, this court held that the trial court did not err in granting the defendant's motion to suppress.

We decline to accept the state's invitation to overrule the *Formica* decision of April 2, 1985. As noted above, certification of that decision to the Supreme Court was denied. The four reasons for the holding of *State* v. *Formica,* supra, 480–83, ring out loud and clear under the circumstances of this case.

---

[5] *State* v. *Formica,* 3 Conn. App. 477, 489 A.2d 1060 (1985), has been cited with approval in two cases since having been decided. *State* v. *Ralston,* 7 Conn. App. 660, 680, 510 A.2d 1346 (1986); *State* v. *Mastrianni,* 5 Conn. App. 634, 636, 501 A.2d 772 (1985).

There is no error as to the defendant Barbary, there is error as to the defendants Scott and Harrison, the judgment as to each of them is set aside and the cases are remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.